Matter of Maria PP. v Commissioner of NYS Off. of Children & Family Servs. (2018 NY Slip Op 04417)





Matter of Maria PP. v Commissioner of NYS Off. of Children & Family Servs.


2018 NY Slip Op 04417


Decided on June 14, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 14, 2018

525821

[*1]In the Matter of MARIA PP., Petitioner,
v
COMMISSIONER OF NYS OFFICE OF CHILDREN & FAMILY SERVICES, Respondent.

Calendar Date: April 30, 2018

Before: McCarthy, J.P., Lynch, Devine, Clark and Pritzker, JJ.


Vincent U. Uba, Albany, for petitioner.
Barbara D. Underwood, Attorney General, Albany (William E. Storrs of counsel), for respondent.


Devine, J.

MEMORANDUM AND JUDGMENT
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Office of Children and Family Services partially denying petitioner's application to have reports maintained by the Central Register of Child Abuse and Maltreatment amended to be unfounded and expunged.
Petitioner is the mother of three children (born in 2003, 2008 and 2011), and two reports were made alleging her maltreatment of them. The first concerned an August 2015 incident in which the eldest child watched as petitioner fought with her boyfriend and was thrown to the ground. The second involved a November 2015 incident in which the boyfriend was allowed into the family residence and struck the middle child in
the back of the head. The Rensselaer County Department of Social Services (hereinafter DSS) investigated the reports together and eventually marked them as "indicated" for maltreatment of all three children due to inadequate guardianship.
Petitioner thereafter requested that the reports be amended to unfounded and expunged from the State Central Register of Child Abuse and Maltreatment. Her request was denied after an administrative review, and an administrative hearing ensued. Following that hearing, petitioner's request was granted with regard to the youngest child but denied as to the middle and eldest children. Petitioner commenced this CPLR article 78 proceeding to challenge the determination.
We confirm. Initially, petitioner observes that DSS failed to determine whether the reports were indicated or unfounded within 60 days as required by Social Services Law § 424 (7). The statute does state that DSS "shall" render its determination within 60 days (Social Services Law § 424 [7]), but that language is insufficient to show "that the designation of time was intended as a limitation on [the agency's] power" (Matter of Grossman v Rankin, 43 NY2d 493, 501 [1977]; see Matter of Pena v New York State Gaming Commn., 127 AD3d 1287, 1289 [2015], appeal dismissed 25 NY3d 1059 [2015], lv denied 26 NY3d 903 [2015]). There must instead be language creating a "specific consequence to flow from the administrative agency's failure to act" in violation of the time limit, language that is entirely absent here (Matter of Janus Petroleum v New York State Tax Appeals Trib., 180 AD2d 53, 55 [1992]; see Matter of Grossman v Rankin, 43 NY2d at 501; Matter of Meyers v Maul, 249 AD2d 796, 797 [1998], lv denied 92 NY2d 807 [1998]). The time limit imposed is accordingly directory, not mandatory, in nature, and "petitioner is not entitled to have [the] determination vacated on this basis" absent a showing of substantial prejudice that has not been made here (Matter of Meyers v Maul, 249 AD2d at 797; see Matter of Pena v New York State Gaming Commn., 127 AD3d at 1289; see also Matter of Skye B., 185 AD2d 880, 881 [1992]).
Turning to the merits of the determination, our review "is limited to whether substantial evidence supports the finding of maltreatment" (Matter of Charlotte MM. v Commissioner of Children & Family Servs., 159 AD3d 1081, 1083 [2018]; see Matter of Elizabeth B. v New York State Off. of Children & Family Servs., 149 AD3d 8, 10 [2017]), and hearsay evidence may constitute substantial evidence "if sufficiently relevant and probative" (Matter of Theresa WW. v New York State Off. of Children & Family Servs., 123 AD3d 1174, 1176 [2014]; see Matter of Charlotte MM. v Commissioner of Children & Family Servs., 159 AD3d at 1083). Maltreatment is established when "a fair preponderance of the evidence [shows] that the physical, mental or emotional condition of [a] child had been impaired or was in imminent danger of becoming impaired because of a failure by petitioner to exercise a minimum degree of care in providing [that] child with appropriate supervision or guardianship" (Matter of Gerald HH. v Carrion, 130 AD3d 1174, 1175 [2015]; see Matter of Michael NN. v Chenango County Dept. of Social Servs., 155 AD3d 1463, 1464 [2017]). The fact that a child witnessed abuse inflicted upon his or her parent is insufficient to show that maltreatment has occurred; rather, "the focus must be on whether [the parent] has met the standard of the reasonable and prudent person in similar circumstances" (Nicholson v Scoppetta, 3 NY3d 357, 371 [2004]; see Matter of Elizabeth B. v New York State Off. of Children & Family Servs., 149 AD3d at 11).
The hearing included testimony from the DSS caseworker who investigated the indicated reports, interviewed the eldest child and learned that she watched petitioner's boyfriend push petitioner to the ground in August 2015. The caseworker also testified that petitioner's boyfriend had been arrested after the November 2015 incident and that petitioner and the middle child had made statements to the effect that the boyfriend had struck the middle child in the course of an argument. These incidents both violated a 2014 order of protection — issued as the result of a violent altercation between petitioner and her boyfriend — directing the boyfriend to refrain from assaulting, harassing or otherwise engaging in criminal conduct toward petitioner or her children [FN1]. Petitioner told the caseworker that she had not seen the boyfriend since February [*2]2015, but later acknowledged at the hearing that they were dating through at least the November 2015 incident. The caseworker testified that the eldest and middle children confirmed as much when she spoke with them and, moreover, the eldest child described other incidents in which she had either observed or was the victim of the boyfriend's abusive behavior. The eldest child made it clear that she was afraid of the boyfriend and believed the other children, and potentially petitioner, were afraid of him as well. The middle child further stated that petitioner and her boyfriend "fought with their words all the time."
Petitioner was made aware of the accounts given by her children, but stated that the boyfriend was only violent in the incident that led to the 2014 order of protection and claimed that other allegations of domestic violence had been fabricated. She went on to say, however, that she assaulted her boyfriend in the November 2015 incident and summoned the police after he prevented her from leaving and refused to leave himself. She further acknowledged that the middle child told police that the boyfriend had hit him during the November 2015 incident but, remarkably, stated that this was because she had instructed the child to lie to the police.
The Office of Children and Family Services (hereinafter OCFS) credited the proof that the eldest child suffered physical and emotional impairment as a result of petitioner allowing the boyfriend near that child despite knowing of the boyfriend's propensity for violence and the child's fear of him. OCFS further determined that petitioner placed the middle child in imminent risk of physical and emotional harm given her admissions to attacking the boyfriend in the child's presence and then ordering the child, who already had mental health issues and a propensity to lie, to lie to authorities about what had happened during the November 2015 incident. Substantial evidence supports these findings, which reveal that petitioner fell far below what would be expected of a reasonable and prudent person in similar circumstances and subjected the eldest and middle children to actual or imminent harm. Thus, OCFS's determination will not be disturbed (see Matter of Irving v Carrion, 120 AD3d 500, 501 [2014]; Matter of Martin MM. v New York State Off. of Children & Family Servs., 110 AD3d 1285, 1286 [2013]; Matter of Anthony S. [Dawn N.], 98 AD3d 519, 520 [2012]; cf. Matter of Elizabeth B. v New York State Off. of Children & Family Servs., 149 AD3d at 9-13).
McCarthy, J.P., Lynch, Clark and Pritzker, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: Petitioner's boyfriend faced charges for violating the terms of the order of protection as a result of his conduct during the November 2015 incident. Notably, petitioner refused to provide a deposition to police in the aftermath of that incident because she "did not want [the boyfriend] to be arrested."