Max B. HOPE, Plaintiff,

v.

**CONTINENTAL BAKING COMPANY, Defendant.**

**Civ. A. No. 89–585–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 31, 1990.

John L. Lumpkins, Jr., Lumpkins & Halligan, Richmond, Va., for plaintiff.

Gary S. Marshall, Dana L. Rust, McGuire, Woods, Battle & Boothe, Richmond, Va., for defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This case is before the court on the defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Because the facts alleged by the plaintiff do not support a cause of action against this defendant, Continental Baking is entitled to judgment as a matter of law, and its motion is granted.

### I.

The factual history of this case is not disputed. Max Hope worked for Continental Baking Company from September 10, 1964 until he retired on June 30, 1987. While employed at Continental, Mr. Hope was a member of the Warehouse Employees Local Union No. 322 ("the Union"), which was a party to a collective bargaining agreement with Continental ("the agreement"). On July 2, 1987, two days after Hope retired, the Union filed a grievance on his behalf seeking vacation pay it asserted Continental owed Hope under the terms of the agreement. Continental denied this grievance on July 9, 1987, stating that the agreement did not entitle Hope to the requested vacation pay because he had retired prior to his anniversary date of September 10. The Union declined to arbitrate the grievance, and Hope did not have the authority under the agreement to compel arbitration without the Union's consent. On August 29, 1989, Hope filed a warrant in debt against Continental for $1,750 in Richmond General District Court, alleging breach of contract. Continental removed it to this court on September 18, 1989.

The underlying dispute between Hope and Continental is over when vacation days accrue for a retiring worker. Article VII of the agreement establishes a schedule for entitlement to annual vacation ranging from 1 week after 1 year to 5 weeks after 20 years. Upon termination of employment, the agreement provides that employees shall be entitled to vacation that has been earned but not taken. It also provides: "In addition each employee who has one (1) or more years of continuous service, shall also be entitled to a pro-rata vacation based on the number of months he has worked between his anniversary date and the date of termination."

The plaintiff had taken five weeks of vacation in 1987 before his retirement date, but he argues that this was vacation that accrued on September 10, 1986 (the date of his 22nd anniversary), and that he is entitled to payment for ¾ths of his 5 weeks of annual vacation that accrued as a result of his work from September 10, 1986 through

June 30, 1987. Continental counters that the agreement has always been interpreted to mean that an employee had to meet seniority dates for the pro rata provisions to apply, and that Hope had not met his date.

## II.

 As a preliminary matter, § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, preempts any state law cause of action that is substantially dependent upon analysis of the terms of a collective bargaining agreement. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985). Because this suit cannot be resolved without reference to the collective bargaining agreement entered into by the plaintiff's union and the defendant employer, this claim arises under § 301 and removal to this court was appropriate. *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968).

 An individual employee can bring suit against his employer for breach of a collective bargaining agreement under § 301 of the Labor Management Relations Act, but ordinarily he is required to exhaust any grievance or arbitration remedies provided in that agreement first. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). When the employee's union has the sole power to invoke arbitration and has breached its duty of fair representation by wrongfully refusing to process the grievance (or by processing it in a perfunctory, arbitrary, dishonest, or discriminatory manner), however, the employee has a cause of action against both his employer and his union. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). When this occurs, the plaintiff is said to have a "hybrid § 301/fair representation claim" that can be asserted against his employer, his union, or both. To prevail against either or both parties, the plaintiff must prove a breach of the collective bargaining agreement by the company *and* a breach of the union's duty of fair representation. *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983).

 In this case, the plaintiff has alleged that his employer breached the collective bargaining in denying his request for accrued vacation pay. His union, however, declined to take his claim to arbitration, so the contractual grievance procedures have not been exhausted. Thus, the plaintiff has asserted a hybrid § 301/fair representation claim and must prove that the Union breached its duty of fair representation to prevail in his case against his employer. It is irrelevant that the plaintiff did not join the Union as a defendant—proof of the Union's breach of its duty of fair representation is an element of the case against his employer whether the Union is joined or not. *Id.* Because the plaintiff admits that his Union has not breached its duty of fair representation in this case, the plaintiff has not made out a cognizable cause of action against his former employer, and summary judgment in favor of the defendant is appropriate.

 Moreover, the defendant is correct in its contention that the plaintiff's claim is time-barred. Hybrid § 301/fair representation claims like this one are governed by the six month statute of limitations set forth in § 10(b) of the National Labor Relations Act. 29 U.S.C. § 160(b); *DelCostello,* 462 U.S. at 170–72, 103 S.Ct. at 2294; *Farr v. H.K. Porter Co.,* 727 F.2d 502, 505 (5th Cir.1984). *Cf. International Union of Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) (where a union brings a straight breach of contract suit against an employer and there is no agreement to submit disputes to arbitration, the state statute of limitations applies). Mr. Hope's cause of action accrued in July of 1987 when his grievance was denied and the Union declined to file for arbitration, but he did not file this suit until August 29, 1989, over two years later. Therefore, it is barred by the applicable statute of limitations.

### III.

 Finally, the plaintiff's argument that he, as a retiree, was not required to exhaust contractual grievance procedures is not persuasive. In support of this proposition, the plaintiff cites *Anderson v. Alpha Portland Indus.*, 752 F.2d 1293 (8th Cir.) (en banc), *cert. denied*, 471 U.S. 1102, 105 S.Ct. 2329, 85 L.Ed.2d 846 (1985). In that case, the Eighth Circuit held that retired employees seeking benefits from their former employer did not have to exhaust the remedies established by the collective bargaining agreement before suing the employer for breach of contract. *Id.* at 1298–99. Assuming that the *Anderson* case was correctly decided, certain critical facts distinguish this case from that one. In the case at bar, the plaintiff seeks not retirement benefits, but vacation pay that accrued while he was still an employee of Continental. Furthermore, the collective bargaining agreement covering this relationship, unlike the one at issue in *Anderson*, mandates binding arbitration as the exclusive means of resolving contractual disputes.

The distinction between this case and *Anderson* is best seen when it is compared to *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984), which was the main authority cited by the Eighth Circuit in support of its the holding in *Anderson*. In *Schneider*, the Supreme Court held that trustees of multi-employer trusts were entitled to sue employers for trust fund contributions without first submitting the claim to arbitration. Because a union's duty of fair representation runs only to the members of its collective bargaining unit and *not* to pension fund trustees, the Court held that the parties to that collective bargaining agreement did not intend to require the trustees to rely on the union to arbitrate their disputes with the employer. *Id.* at 375–76, 104 S.Ct. at 1850–51.

In this case, however, the Union did have a duty to represent Hope's interests fairly, and the parties to the collective bargaining agreement did intend to require arbitration of this type of dispute. The more appropriate analogy for this case is *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), where a laid off worker seeking severance pay was required to exhaust his contractual remedies before he could proceed independently against his employer. *Id.* at 656, 85 S.Ct. at 618. Unlike the retirees in *Anderson*, Mr. Hope's situation is more like that of a laid off employee with a claim for severance benefits, who is presumed to be required to arbitrate his grievance, than that of a trustee of a pension fund, who is not.

### IV.

Because it appears from the record before the court that there are no genuine disputes as to any facts material to this case, and because the facts alleged by the plaintiff entitle the defendant to judgment as a matter of law, the defendant's motion for summary judgment is granted.